IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAMZI BIN AL-SHIBH,    :
            :
    Petitioner    :
            :
    v.       :    Civil No. 06-1725 (EGS)
            :
GEORGE W. BUSH, *et al.*,   :
            :
    Respondents.   :

## PETITIONER'S RESPONSE TO THE COURT'S JULY 31, 2008, ORDER REGARDING PROTECTIVE ORDER ISSUES

Pursuant to the Court's directive at the status conference held on July 29, 2008, and in its Order entered on July 31, 2008, in the above-captioned case, that counsel confer on the terms of an appropriate protective order, undersigned counsel for Petitioner have conferred with counsel for Respondents, who have indicated that they do not agree to entry of the Standard Protective Order.  *See* Email from Terry Henry, 7/30/08, attached as Exhibit A.  As a result, the matter must be resolved by the Court.

Ramzi bin al-Shibh herein seeks the entry of the standard protective order entered by the Honorable Joyce Hens Green, U.S.D.J., in *In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), and the Honorable Thomas F. Hogan, U.S.D.J., in all of the other currently active habeas cases, including those charged by military commission, on July 29, 2008.  This Order includes the following:  (1) the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004, 344 F. Supp. 2d 174 (D.D.C. 2004); (2) the Order Addressing Designation

Procedures for "Protected Information," first issued on November 10, 2004; and (3) the Order

Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended

Protective Order, first issued on December 14, 2004. Petitioner refers to these orders collectively

as the "Standard Protective Order."

The Standard Protective Order, as entered in *Zalita v. Bush*, No. 05-cv-1220 (RMU), is

attached hereto as Petitioner's Exhibit B. This order was the product of months of negotiation,

briefing and argument before Judge Green, and is fully capable of governing all Guantanamo

habeas cases. *See Adem v. Bush*, 425 F. Supp. 2d 7, 101-2 (D.D.C. 2006) (describing the lengthy

process by which the Standard Protective Order was created). For the reasons below, the

Standard Protective Order should be entered in Petitioner's case.

> **I.      Judge Hogan's Entry of the Standard Protective Order in All Other Active
> Habeas Cases, Including Those Of Petitioners Charged By Military
> Commission, Compels the Entry of the Standard Protective Order in This
> Case to Achieve Uniformity and Consistency.**

On July 29, 2008, Judge Hogan entered an Order directing that the Standard Protective

Order is to apply in all cases that are before Judge Hogan for coordination purposes. *See In re*

*Guantanamo Bay Detainee Litigation*, Misc. No. 08-442 (TFH). Notably, the cases before Judge

Hogan include those of other habeas petitioners who have been charged in the military

commissions. *See e.g., Al-Nashiri v. Bush*, No. 08-cv-1207 (RWR) (dkt. no. 9) (filed July 29,

2008). Entry of the Standard Protective Order in this case would thus achieve uniformity and

consistency among all habeas petitioners, particularly with respect to those charged by military

commission. Indeed, the entry of the Standard Protective Order would prevent disparate

treatment and avoid the incongruous situation in which counsel for Petitioner Ramzi bin al-Shibh

2

are subject to a more restrictive protective order that severely limits client access and access to information. In such a case, counsel's representation of Petitioner would be significantly and disparately impaired, versus that of other similarly situated counsel.

Moreover, the ability to share presumptively TS//SCI information is a particularly important issue that potentially cuts across numerous Guantanamo detainee habeas cases. In any instances where prisoners in cases involving presumptively TS//SCI information may have inculpated Petitioner and/or other detainees while under torture, counsel for those prisoners and Petitioner require some mechanism to discover and test exculpatory information, while maintaining privilege and an appropriate working relationship. Petitioner's TS//SCI security-cleared counsel must be permitted to share presumptively TS//SCI information with such detainees' counsel. However, as discussed *infra* Section III, pursuant to the terms of the protective order that currently governs counsel access to Petitioner in his Detainee Treatment Act case, counsel are expressly prohibited from sharing classified information with other counsel or with this Court absent permission from the Justice Department. Thus, ensuring consistency among all counsel who will require access to presumptively TS//SCI information is a further reason why this Court should enter the Standard Protective Order in Petitioner's habeas case.

The Standard Protective Order thus must be entered in this case to avoid disparate results, and to achieve uniformity and consistency across the habeas cases and, specifically, the habeas petitions of those charged by military commission.

3

## II.    The Standard Protective Order Specifically Contemplates and Is Sufficiently Capable of Handling Presumptively Top Secret//Sensitive Compartmented Information.

The Standard Protective Order should additionally be entered in this case because it specifically contemplates the handling and governing of filings that contain presumptively TS//SCI information.  The Standard Protective Order expressly sets forth provisions to govern habeas counsel's access to TS//SCI information.  *See* Amended Protective Order, Ex. B, ¶ 9 (defining "classified information" to be used in these cases as including "any classified document or information" that has been classified as "'CONFIDENTIAL,' 'SECRET,' or 'TOP SECRET,' or additionally controlled as 'SENSITIVE COMPARTMENTED INFORMATION (SCI).'").

Moreover, the Standard Protective Order is fully sufficient of handling and governing filings that contain presumptively TS//SCI information.  To date, the Standard Protective Order has governed habeas cases involving all levels of classified information.  In fact, presumptively TS//SCI information has already been filed in at least one habeas case under the Standard Protective Order.  *See* Motion for Hearing for Inquiry Concerning Destruction of Evidence Related to CIA Detainee Interrogations, *Zalita v. Bush*, No. 05-cv-1220 (RMU) (D.D.C.) (dkt. no. 82) (filed Jan. 15, 2008).  At the time the original protective order was litigated before Judge Green, the government did not argue that additional provisions were necessary to protect TS//SCI information, and it should not be heard to argue otherwise now.  No harm resulted from the filings in the *Zalita* case, and none would if the Standard Protective Order were entered in this case involving presumptively TS//SCI information.[1]

_____

[1]    To the extent that the Court Security Office ("CSO") may request further ministerial changes to the Standard Protective Order, such as modifications to the procedures for transporting legal mail containing presumptively TS//SCI information, Petitioner will attempt to

### III. To the Extent that the Government Seeks Entry of a Protective Order Modeled on The Protective Order Applicable in Detainee Treatment Act Cases, Such a Protective Order is Unduly Restrictive.

Petitioner objects to the entry of a protective order that is modeled on the SCI Protective Order applicable in Detainee Treatment Act cases.[2] As shown below, such a protective order is so restrictive that it prevents counsel from adequately and effectively representing Petitioner.

### A. The DTA SCI Protective Order's Prohibition Against Counsel Disclosing "Any Classified or Protected Information to Any Person Including Counsel in Related Cases Brought By Guantanamo Bay Detainees" Violates Petitioner's Due Process Rights and Right to Counsel.

It is a distinct possibility that Petitioner's habeas case will involve the discovery of exculpatory statements made by other detainees, as well as inculpatory statements. Crucial to counsel's representation of Petitioner is the determination of whether such inculpatory statements, if any, bear the indicia of reliability and veracity. The DTA SCI Protective Order, as contained in Section 5(H), prohibits the sharing of information among counsel for detainees. Section 5(H) thus restricts the ability to test the reliability and circumstances of inculpatory statements made by other detainees, to discover statements by other detainees that may exculpate, and to develop evidence corroborating claims regarding treatment by the government in the face of the government's direct attacks on credibility, if any. The restriction on sharing information among counsel for Petitioner and counsel for other detainees not similarly restricted unnecessarily

reach agreement with the CSO and the government on those matters.

---

[2]     In the Joint Report in Response to Judge Hogan's July 11, 2008, Order, the government indicated that it sought entry of the DTA protective order in cases involving the former CIA prisoners. *See, e.g., al-Nashiri v. Bush*, No. 08-cv-1207 (RWR), Mag. No. 08-442 (TFH) (July 21, 2008). The protective order that was entered in Petitioner Ramzi bin al-Shibh's DTA case has been attached hereto as Exhibit C.

impedes on, *inter alia*, Petitioner's ability to determine the credibility of statements that may be used against Petitioner and the circumstances under which such statements were made.  Such a provision thus unlawfully interferes with Petitioner's right to counsel access and due process rights.

**B.    The Government's Ability to Unilaterally Determine That Information Does Not Constitute "Legal Mail" Under the DTA SCI Protective Order Violates Petitioner's Due Process Rights and Right to Counsel.**

Under Sections 3(I) and 4(B) of the DTA SCI Protective Order, the government may unilaterally determine that the information contained in letters from clients to attorneys and attorney notes reflecting communication with clients do not constitute "legal mail" and may then redact such material.  Such provisions also fail to permit Petitioner's counsel the opportunity to review the redacted information in order to decide whether to challenge the government's unilateral determination.  Not only does the government's redaction of attorney-client communication without allowing counsel to review the redacted information violate Petitioner's right to counsel access, but the government's refusal to allow attorneys to review the redacted information in order to decide whether to challenge the government's determination violates Petitioner's right to due process.  Moreover, the government's refusal to allow attorneys to review the redacted information effectively deprives this Court of its inherent power to review compliance with its own order in a vigorously argued adversary proceeding.

C.      **The Government's Reservation of the Right to Unilaterally Take Protective Measures to Safeguard Classified Information in the DTA SCI Protective Order Impermissibly Impedes on the Ability to Prepare and Present A Defense and Violates Petitioner's Right to Counsel Access.**

Under Section 9(B) of the DTA SCI Protective Order, the government specifically reserves "the right to unilateral take [sic] protective measures to safeguard classified information." Such a provision violates Petitioner's right to counsel access and due process rights by unnecessarily and impermissibly restricting his and counsel's ability to prepare and present evidence. In addition, the government's threat of unilateral action is unnecessary because there are readily available and adequate alternative remedies for safeguarding classified information.

D.      **The DTA SCI Protective Order Impermissibly Allows the Government to Withhold Highly Sensitive Information or Information Concerning a Highly Sensitive Source, Subject Only to an *Ex Parte*, *In Camera* Review.**

Under Section 5(B) of the DTA SCI Protective Order, the government may unilaterally withhold "highly sensitive information," subject only to an *ex parte*, *in camera* review. The government's unilateral withholding of such information is unnecessary where counsel have Top Secret/SCI clearances and is inconsistent with the presumption that such cleared counsel have a "need to know" information in the government's possession concerning Petitioner. The government's unilateral withholding of such information would deprive this Court of the vigorous adversarial proceeding it deserves when deciding critical issues in this case, and would violate Petitioner's rights to counsel access and to due process.

**IV.     Conclusion.**

As discussed above, the Standard Protective Order, which Judge Hogan has entered in all other active habeas cases including those of detainees charged by military commission, specifically contemplates and has been shown to be sufficiently capable of handling presumptively TS//SCI information.  In order to achieve uniformity and consistency, the Standard Protective Order should be entered in Petitioner's case.


                                        Respectfully submitted,


Date:   August 4, 2008                  __/s/Candace Hom_____
                                        Richard Coughlin
                                        Federal Public Defender
                                        Chester M. Keller
                                        First Assistant Federal Public Defender
                                        Candace Hom
                                        Assistant Federal Public Defender
                                        Federal Public Defender's Office
                                        972 Broad Street, Fourth Floor
                                        Newark, NJ 07102
                                        (973) 645-6347

                                        *Counsel for Petitioner Ramzi bin al-Shibh*

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2008, I filed and served the foregoing Petitioner Ramzi

bin al-Shibh's **Response to the Court's July 31, 2008, Order Regarding Protective Order**

**Issues** by causing the original and six copies to be delivered to the Court Security Officer via

Federal Express, with the original and four copies to be forwarded to the Court, and one copy to

be conformed and returned to our office.

I further certify that upon receiving clearance from the Court Security Officer, one copy

will be forwarded to the following counsel of record via U.S. mail:

Terry Henry
Andrew Warden
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C.  20530


    /s/Candace Hom
Candace Hom



"Henry, Terry (CIV)"
<Terry.Henry@usdoj.gov>
07/30/2008 07:06 PM

To  "Candace Hom" <Candace_Hom@fd.org>

cc  "Warden, Andrew (CIV)" <Andrew.Warden@usdoj.gov>

bcc

Subject  RE: Ramzi bin alshibh, Civ. No. 06-1725

History:        ⇩ This message has been forwarded.

Candace,

We are not in a position to agree to entry of the standard habeas
protective order in this case, for reasons including those mentioned in
my July 18, 2008 e-mail to Wells Dixon, on which you were cc'd.

Best regards,

Terry

Terry M. Henry
Senior Trial Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
Tel. 202.514.4107

The information in this transmittal (including attachments, if any) is
intended only for the recipient(s) listed above and may contain
information that is privileged and confidential. Any review, use,
disclosure, distribution, or copying of this transmittal is prohibited
except by or on behalf of the intended recipient. If you have received
this transmittal in error, please notify me immediately and destroy all
copies of the transmittal. Your cooperation is appreciated.

-----Original Message-----
From: Candace Hom [mailto:Candace_Hom@fd.org]
Sent: Wednesday, July 30, 2008 3:32 PM
To: Henry, Terry (CIV); Warden, Andrew (CIV)
Subject: Ramzi bin alshibh, Civ. No. 06-1725

Hi Terry and Andrew -- It was nice meeting you both yesterday.  In light
of Judge Hogan's entering of the standard habeas PO yesterday in the
other cases, would you be agreeable to Judge Sullivan entering the
standard habeas PO in Ramzi bin al-shibh's case?

Thanks,
Candace

Candace Hom
Federal Public Defender's Office
972 Broad Street, Fourth Floor
Newark, NJ  07102
t: 973-645-6347
f: 973-297-4807

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| *In re* **Guantanamo Detainee Cases** | ) ) ) ) ) ) ) ) ) | **Civil Action Nos.**<br>**02-CV-0299 (CKK), 02-CV-0828 (CKK),**<br>**02-CV-1130 (CKK), 04-CV-1135 (ESH),**<br>**04-CV-1136 (JDB), 04-CV-1137 (RMC),**<br>**04-CV-1142 (RJL), 04-CV-1144 (RWR),**<br>**04-CV-1164 (RBW), 04-CV-1166 (RJL),**<br>**04-CV-1194 (HHK), 04-CV-1227 (RBW),**<br>**04-CV-1254 (HHK), 04-CV-1519 (JR)** |

**AMENDED PROTECTIVE ORDER AND PROCEDURES FOR COUNSEL ACCESS
TO DETAINEES AT THE UNITED STATES NAVAL BASE
IN GUANTANAMO BAY, CUBA**

This matter comes before the Court upon Respondents' Motion for Protective Order to prevent the unauthorized disclosure or dissemination of classified national security information and other protected information that may be reviewed by, made available to, or are otherwise in the possession of, the petitioners and/or petitioners' counsel in these coordinated cases. Pursuant to the general supervisory authority of the Court, in order to protect the national security, and for good cause shown,

IT IS ORDERED:

1.     The Court finds that these cases involve classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know." These cases may also involve other protected information or documents, the storage, handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.

2.     The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in

Case 1:05-cv-02200-RMU    Document 11-2    Filed 07/12/2006    Page 2 of 49

these cases, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with these cases, including the privilege team as defined in Exhibit A.

3.      The procedures set forth in this Protective Order will apply to all aspects of these cases, and may be modified by further order of the Court *sua sponte* or upon application by any party. The Court will retain continuing jurisdiction to enforce or modify the terms of this Order.

4.      Nothing in this Order is intended to or does preclude the use of classified information by the government as otherwise authorized by law outside of these actions.

5.      Petitioners' counsel shall be responsible for advising their employees, the petitioners, and others of the contents of this Protective Order, as appropriate or needed.

6.      Petitioners' counsel are bound by the terms and conditions set forth in the "Revised Procedures For Counsel Access To Detainees At the U.S. Naval Base In Guantanamo Bay, Cuba," and the procedures for handling mail and documents brought into and out of counsel meetings, attached hereto as Exhibit A. This Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in Exhibit A to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information. Any violation of the terms and conditions of those procedures will also be deemed a violation of this Protective Order. This paragraph does not apply with respect to provisions in the procedures contained in Exhibit A that are or have been overridden by the Court.

7.      The privilege team shall not disclose to any person any information provided by counsel for a petitioner or by a petitioner, other than information provided in a filing with the Court, unless such information, if it were monitored information, could be disclosed under Section X of Exhibit A. Such disclosure shall be consistent with the provisions of Section X of Exhibit A.

2

Definitions

8.      As used herein, the words "documents" or "information" shall include, but are not limited to, all written or printed matter of any kind, formal or informal, including originals, conforming copies and non-conforming copies (whether different from the original by reason of notation made on such copies or otherwise), and further include, but are not limited to:

a.      papers, correspondence, memoranda, notes, letters, reports, summaries, photographs, maps, charts, graphs, interoffice and intra-office communications, notations of any sort concerning conversations, meetings, or other communications, bulletins, teletypes, telegrams, telefacsimiles, invoices, worksheets, and drafts, alterations, modifications, changes and amendments of any kind to the foregoing;

b.      graphic or oral records or representations of any kind, including, but not limited to, photographs, charts, graphs, microfiche, microfilm, videotapes, sound recordings of any kind, and motion pictures;

c.      electronic, mechanical or electric records of any kind, including, but not limited to, tapes, cassettes, disks, recordings, electronic mail, films, typewriter ribbons, word processing or other computer tapes or disks, and all manner of electronic data processing storage; and

d.      information acquired orally.

9.      The terms "classified national security information and/or documents," "classified information" and "classified documents" refer to:

a.      any classified document or information that has been classified by any Executive Branch agency in the interests of national security or pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE

3

COMPARTMENTED INFORMATION (SCI)," or any classified information contained in such document;

        b.    any document or information, regardless of its physical form or characteristics, now or formerly in the possession of a private party that has been derived from United States government information that was classified, regardless of whether such document or information has subsequently been classified by the government pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)";

        c.    verbal or non-documentary classified information known to the petitioner or petitioners' counsel; or

        d.    any document and information as to which the petitioner or petitioners' counsel have been notified orally or in writing that such documents or information contains classified information.

        10.    All classified documents, and information contained therein, shall remain classified unless the documents bear a clear indication that they have been declassified by the agency or department that is the original classification authority of the document or the information contained therein (hereinafter, the "original classification authority").

        11.    The terms "protected information and/or documents," "protected information" and "protected documents" refer to any document or information deemed by the Court, either upon application by counsel or *sua sponte*, as worthy of special treatment as if the document or information were classified, even if the document or information has not been formally deemed to be classified.

        12.    For purposes of this Protective Order, "petitioners' counsel" shall be defined to include an attorney who is employed or retained by or on behalf of a petitioner for purposes of

Case 1:05-cv-02200-RMU    Document 122    Filed 07/21/2008    Page 57 of 349

representing the petitioner in habeas corpus or other litigation in federal court in the United States, as well as co-counsel, interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation.

13.    "Access to classified information" or "access to protected information" shall mean having access to, reviewing, reading, learning, or otherwise coming to know in any manner any classified information or protected information.

14.    "Secure area" shall mean a physical facility accredited or approved for the storage, handling, and control of classified information.

15.    "Unauthorized disclosure of classified information" shall mean any knowing, willful or negligent action that could reasonably be expected to result in a communication or physical transfer of classified information to an unauthorized recipient.

Designation of Court Security Officer

16.    The Court designates Christine E. Gunning as Court Security Officer for these cases, and Joan B. Kendrall, Michael P. Macisso, James P. Londergan, Mary M. Cradlin, Daniel O. Hartenstine, John P. Molinard, Jennifer Campbell, and Barbara J. Russell as Alternate Court Security Officers, for the purpose of providing security arrangements necessary to protect from unauthorized disclosure of any classified documents or information, or protected documents or information, to be made available in connection with these cases.  Petitioners' counsel shall seek guidance from the Court Security Officer with regard to appropriate storage, handling, transmittal, and use of classified documents or information.

Access to Classified Information and Documents

17.    Without authorization from the government, no petitioner or petitioners' counsel
shall have access to any classified information involved in these cases unless that person shall
first have:

a.    made a written submission to the Court Security Officer precisely stating
the reasons why counsel has a need to know the classified information requested; and

b.    received the necessary security clearance as determined by the Department
of Justice Security Officer; and

c.    signed the Memorandum of Understanding ("MOU"), attached hereto as
Exhibit B, agreeing to comply with the terms of this Protective Order.

The written submissions that are made by counsel to the Court Security Officer stating the
reasons why counsel has a need to know the classified information requested shall be kept
confidential by the Court Security Officer and shall not be disclosed to any other counsel or party
to these cases unless the Court specifically orders such disclosure.

18.    Petitioners' counsel to be provided access to classified information shall execute
the MOU appended to this Protective Order, and shall file executed originals with the Court and
submit copies to the Court Security Officer and counsel for the government.  The execution and
submission of the MOU is a condition precedent for petitioners' counsel to have access to, or
continued access to, classified information for the purposes of this proceeding.

19.    The substitution, departure, or removal of petitioners' counsel from these cases
for any reason shall not release that person from the provisions of this Protective Order or the
MOU executed in connection with this Order.

6

Case 1:05-cv-02200-RMU    Document 12-2    Filed 07/21/2008    Page 7 of 49

20.    The government shall arrange for one appropriately approved secure area for the use of petitioners' counsel. The secure area shall contain a working area that will be supplied with secure office equipment reasonable and necessary to the preparation of the petitioners' case. Expenses for the secure area and its equipment shall be borne by the government.

21.    The Court Security Officer shall establish procedures to ensure that the secure area is accessible to the petitioners' counsel during normal business hours and at other times on reasonable request as approved by the Court Security Officer. The Court Security Officer shall establish procedures to ensure that the secure area may be maintained and operated in the most efficient manner consistent with the protection of classified information. The Court Security Officer or Court Security Officer designee may place reasonable and necessary restrictions on the schedule of use of the secure area in order to accommodate appropriate access to all petitioners' counsel in this and other proceedings.

22.    All classified information provided by the government to counsel for petitioners, and all classified information otherwise possessed or maintained by petitioners' counsel, shall be stored, maintained, and used only in the secure area.

23.    No documents containing classified information may be removed from the secure area unless authorized by the Court Security Officer or Court Security Officer designee supervising the area.

24.    Consistent with other provisions of this Protective Order, petitioners' counsel shall have access to the classified information made available to them in the secure area, and shall be allowed to take notes and prepare documents with respect to those materials.

25.    Petitioners' counsel shall not copy or reproduce any classified information in any form, except with the approval of the Court Security Officer or in accordance with the procedures established by the Court Security Officer for the operation of the secure area.

7

26.     All documents prepared by petitioners or petitioners' counsel that do or may contain classified information (including without limitation, notes taken or memoranda prepared by counsel and pleadings or other documents intended for filing with the Court) shall be transcribed, recorded, typed, duplicated, copied, or otherwise prepared only by persons who have received an appropriate approval for access to classified information. Such activities shall take place in the secure area on approved word processing equipment and in accordance with the procedures approved by the Court Security Officer. All such documents and any associated materials containing classified information (such as notes, memoranda, drafts, copies, typewriter ribbons, magnetic recordings, exhibits) shall be maintained in the secure area unless and until the Court Security Officer advises that those documents or associated materials are unclassified in their entirety. None of these materials shall be disclosed to counsel for the government unless authorized by the Court, by petitioners' counsel or as otherwise provided in this Protective Order.

27.     Petitioners' counsel shall discuss classified information only within the secure area or in another area authorized by the Court Security Officer, shall not discuss classified information over any standard commercial telephone instrument or office intercommunication system, and shall not transmit or discuss classified information in electronic mail communications of any kind.

28.     The Court Security Officer or Court Security Officer designee shall not reveal to any person the content of any conversations she or he may hear by or among petitioners' counsel, nor reveal the nature of documents being reviewed by them, or the work generated by them, except as necessary to report violations of this Protective Order to the Court or to carry out their duties pursuant to this Order. In addition, the presence of the Court Security Officer or Court Security Officer designee shall not operate as a waiver of, limit, or otherwise render inapplicable, the attorney-client privilege or work product protections.

8

Case 1:05-cv-01220-RMU    Document 101-2    Filed 07/21/2008    Page 9 of 19

29.     Petitioners' counsel shall not disclose the contents of any classified documents or information to any person, including counsel in related cases brought by Guantanamo Bay detainees in this or other courts, except those authorized pursuant to this Protective Order, the Court, and counsel for the government with the appropriate clearances and the need to know that information.  Except as otherwise specifically provided by Judge Colleen Kollar-Kotelly in her well-reasoned opinion addressing counsel access procedures regarding petitioners Mohammed Ahmed al Kandari, Fawzi Khalid Abdullah Fahad al Odah, and Khalid Abdullah Mishal al Mutairi in Al Odah v. United States, 02-CV-0828 (CKK), counsel for petitioners in these cases are presumed to have a "need to know" information both in their own cases and in related cases pending before this Court.  Therefore, and except as provided with respect to the three petitioners in Al Odah mentioned above, counsel for all petitioners in these cases who have satisfied all necessary prerequisites and follow all procedures set forth herein may share and discuss among themselves classified information to the extent necessary for the effective representation of their clients.  Counsel for respondents may challenge the "need to know" presumption on a case-by-case basis for good cause shown.

30.     Petitioners' counsel shall not disclose classified information not provided by petitioner-detainee to that petitioner-detainee.  Should petitioners' counsel desire to disclose classified information not provided by petitioner-detainee to that petitioner-detainee, petitioners' counsel will provide in writing to the privilege review team (See Exhibit A) a request for release clearly stating the classified information they seek to release.  The privilege review team will forward the petitioner counsel's request to the appropriate government agency authorized to declassify the classified information for a determination.  The privilege review team will inform petitioners' counsel of the determination once it is made.

31.     No petitioner or counsel for petitioner shall disclose or cause to be disclosed any information known or believed to be classified in connection with any hearing or proceeding in these cases except as otherwise provided herein.

32.     Except as otherwise stated in this paragraph and to ensure the security of the United States of America, at no time, including any period subsequent to the conclusion of the proceedings, shall petitioners' counsel make any public or private statements disclosing any classified information or documents accessed pursuant to this Protective Order, including the fact that any such information or documents are classified.  In the event that classified information enters the public domain, however, counsel is not precluded from making private or public statements about the information already in the public domain, but only to the extent that the information is in fact in the public domain.  Counsel may not make any public or private statements revealing personal knowledge from non-public sources regarding the classified or protected status of the information or disclosing that counsel had personal access to classified or protected information confirming, contradicting, or otherwise relating to the information already in the public domain.  In an abundance of caution and to help ensure clarity on this matter, the Court emphasizes that counsel shall not be the source of any classified or protected information entering the public domain.

As stated in more detail in paragraph 49 below, failure to comply with these rules may result in the revocation of counsel's security clearance as well as civil and/or criminal liability.

33.     The foregoing shall not prohibit petitioners' counsel from citing or repeating information in the public domain that petitioners' counsel does not know to be classified information or a classified document, or derived from classified information or a classified document.

34.     All documents containing classified information prepared, possessed or maintained by, or provided to, petitioners' counsel (except filings submitted to the Court and

10

served on counsel for the government), shall remain at all times in the control of the Court
Security Officer for the duration of these cases. Upon final resolution of these cases, including
all appeals, all such documents shall be destroyed by the Court Security Officer.

Access to Protected Information and Documents

35.    Without authorization from the government or the Court, protected information
shall not be disclosed or distributed to any person or entity other than the following:

a.    petitioners' counsel, provided such individuals have signed the
Acknowledgment, attached hereto as Exhibit C, attesting to the fact that they have read this
Protective Order and agree to be bound by its terms; and

b.    the Court and its support personnel.

36.    The execution of the Acknowledgment is a condition precedent for petitioners'
counsel to have access to, or continued access to, protected information for the purposes of this
proceeding. A copy of each executed Acknowledgment shall be kept by counsel making the
disclosure until thirty (30) days after the termination of this action, including appeals.

37.    The substitution, departure, or removal of petitioners' counsel from these cases
for any reason shall not release that person from the provisions of this Protective Order or the
Acknowledgment executed in connection with this Protective Order.

38.    Petitioners' counsel shall not disclose the contents of any protected documents or
information to any person, to include counsel in related cases brought by Guantanamo Bay
detainees in this or other courts, except those authorized pursuant to this Protective Order, the
Court, or counsel for the government. Except as otherwise specifically provided by Judge
Colleen Kollar-Kotelly with respect to counsel for petitioners Mohammed Ahmed al Kandari,
Fawzi Khalid Abdullah Fahad al Odah, and Khalid Abdullah Mishal al Mutairi in Al Odah v.
United States, 02-CV-0828 (CKK), counsel for petitioners in these coordinated cases may share
protected information with each other but only to the extent that counsel have appropriate

11

security clearances and that all other procedures set forth in this Protective Order are complied
with. Petitioners' counsel shall maintain all protected information and documents received
through this proceeding in a confidential manner.

39. Petitioners' counsel shall not disclose protected information not provided by
petitioner-detainee to that petitioner-detainee without prior concurrence of counsel for the
government or express permission of the Court.

40. No petitioner or counsel for petitioner shall disclose or cause to be disclosed any
information known or believed to be protected in connection with any hearing or proceeding in
these cases except as otherwise provided herein.

41. At no time, including any period subsequent to the conclusion of the proceedings,
will petitioners' counsel make any public or private statements disclosing any protected
information or documents accessed pursuant to this Protective Order, including the fact that any
such information or documents are protected.

42. Protected information shall be used only for purposes directly related to these
cases and not for any other litigation or proceeding, except by leave of the Court. Photocopies of
documents containing such information shall be made only to the extent necessary to facilitate
the permitted use hereunder.

43. Nothing in this Protective Order shall prevent the government from using for any
purpose protected information it provides a party. Nothing in this Protective Order shall entitle
another party to protected information.

44. Supplying protected information to another party does not waive privilege with
respect to any person or use outside that permitted by this Protective Order.

45. Within sixty (60) days of the resolution of these actions, and the termination of
any appeals therefrom, all protected documents or information, and any copies thereof, shall be
promptly destroyed, provided that the party to whom protected information is disclosed certifies

12

in writing that all designated documents and materials have been destroyed, and further provided

that counsel for the government may retain one complete set of any such materials that were

presented in any form to the Court. Any such retained materials shall be placed in an envelope or

envelopes marked "Protected Information Subject to Protective Order." In any subsequent or

collateral proceeding, a party may seek discovery of such materials from the government, without

prejudice to the government's right to oppose such discovery or its ability to dispose of the

materials pursuant to its general document retention policies.

Procedures for Filing Documents

46.     Until further order of this Court, any pleadings or other document filed by a

petitioner shall be filed under seal with the Court through the Court Security Officer unless the

petitioner has obtained from the Court Security Officer permission, specific to a particular, non-

substantive pleading or document (e.g., motions for extensions of time, continuances, scheduling

matters, etc.) not containing information that is or may be classified or protected, to file the

pleading or document not under seal. The date and time of physical submission to the Court

Security Officer shall be considered the date and time of filing with the Court. The Court

Security Officer shall promptly examine the pleading or document and forward it to the

appropriate agencies for their determination whether the pleading or document contains classified

information. If it is determined that the pleading or document contains classified information,

the Court Security Officer shall ensure that portion of the document, and only that portion, is

marked with the appropriate classification marking and that the document remains under seal. If

it is determined that the pleading or document contains protected information, the Court Security

Officer shall ensure that portion of the document, and only that portion, remains under seal. Any

document filed by petitioner that is determined not to contain classified information or protected

information, and is not subject to any other restrictions on disclosure, shall immediately be

unsealed by the Court Security Officer and placed in the public record. The Court Security

13

Officer shall immediately deliver under seal to the Court and counsel for the government any

pleading or document to be filed by petitioners that contains classified information or protected

information. The Court shall then direct the clerk to enter on the docket sheet the title of the

pleading or document, the date it was filed, and the fact that it has been filed under seal with the

Court Security Officer.

47.      Any pleading or other document filed by the government containing classified

information shall be filed under seal with the Court through the Court Security Officer. The date

and time of physical submission to the Court Security Officer shall be considered the date and

time of filing with the Court. The Court Security Officer shall serve a copy of any classified

pleadings by the government upon the Petitioner at the secure facility.

48.      Nothing herein shall require the government to disclose classified or protected

information. Nor shall anything herein prohibit the government from submitting classified

information or protected information to the Court *in camera* or *ex parte* in these proceedings, or

entitle petitioners or petitioners' counsel access to such submissions or information. Except for

good cause shown in the filing, the government shall provide counsel for the petitioner or

petitioners with notice served on such counsel on the date of the filing.

Penalties for Unauthorized Disclosure

49.      Any unauthorized disclosure of classified information may constitute violations of

United States criminal laws. In addition, any violation of the terms of this Protective Order shall

be immediately brought to the attention of the Court and may result in a charge of contempt of

Court and possible referral for criminal prosecution. See e.g., Executive Order 12958, as

amended. Any breach of this Protective Order may also result in the termination of access to

classified information and protected information. Persons subject to this Protective Order are

advised that direct or indirect unauthorized disclosure, retention, or negligent handling of

classified documents or information could cause damage to the national security of the United

States or may be used to the advantage of an adversary of the United States or against the interests of the United States. Persons subject to this Protective Order are also advised that direct or indirect unauthorized disclosure, retention, or negligent handling of protected documents or information could risk the security of United States government personnel and facilities, and other significant government interests. This Protective Order is to ensure that those authorized to receive classified information and protected information will not divulge this information to anyone who is not authorized to receive it, without prior written authorization from the original classification authority and in conformity with this Protective Order.

50.    The termination of these proceedings shall not relieve any person or party provided classified information or protected information of his, her, or its obligations under this Protective Order.

IT IS SO ORDERED.

November 8, 2004

_____/s/_____
JOYCE HENS GREEN
United States District Judge

15

# Exhibit A

EXHIBIT A

## REVISED PROCEDURES FOR COUNSEL ACCESS TO DETAINEES
## AT THE U.S. NAVAL BASE IN GUANTANAMO BAY, CUBA

### I. Applicability

Except as otherwise stated herein or by other Order issued in the United States District Court for the District of Columbia, the following procedures shall govern counsel access to all detainees in the control of the Department of Defense ("DoD") at the U.S. Naval Base in Guantanamo Bay, Cuba ("GTMO") by counsel for purposes of litigating the cases in which this Order is issued.

These procedures do not apply to counsel who are retained solely to assist in the defense of a detainee in a trial by military commission. Access by that counsel is covered by the Procedures for Monitoring Communications Between Detainees Subject to Trial by Military Commission and their Defense Counsel Pursuant to Military Commission Order No. 3.

### II. Definitions

A. Communications: All forms of communication between counsel and a detainee, including oral, written, electronic, or by any other means.

B. Counsel: An attorney who is employed or retained by or on behalf of a detainee for purposes of representing the detainee in the United States District Court for the District of Columbia and who is admitted, either generally or pro hac vice, in this Court. Unless otherwise stated, "counsel" also includes co-counsel, interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation.

C. Detainee: An individual detained by DoD as an alleged enemy combatant at the U.S. Naval Base in Guantanamo Bay, Cuba.

D. Privilege Team: A team comprised of one or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, will not take part in, any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee. If required, the privilege team may include interpreters/translators, provided that such personnel meet these same criteria.

E. Legal Mail: Letters written between counsel and a detainee that are related to the counsel's representation of the detainee, as well as privileged documents and publicly-filed legal documents relating to that representation.

1

EXHIBIT A

### III. Requirements for Access to and Communication with Detainees

A. Security Clearance:

    1.    Counsel must hold a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel).

    2.    Counsel who possess a valid security clearance shall provide, in writing, the date of their background investigation, the date such clearance was granted, the level of the clearance, and the agency who granted the clearance. Access will be granted only after DoD verification of the security clearance.

    3.    Counsel who does not currently possess a Secret clearance will be required to submit to an application for clearance to the Department of Justice, Litigation Security Division.

B. Acknowledgment of and Compliance with Access Procedures

    1.    Before being granted access to the detainee, counsel will receive a copy of these procedures. To have access to the detainee, counsel must agree to comply fully with these procedures and must sign an affirmation acknowledging his/her agreement to comply with them.

    2.    This affirmation will not be considered an acknowledgment by counsel that the procedures are legally permissible. Even if counsel elects to challenge these procedures, counsel may not knowingly disobey an obligation imposed by these procedures.

    3.    The DoD expects that counsel, counsel's staff, and anyone acting on the behalf of the attorney will fully abide by the requirements of this document. Counsel is required to provide the DoD with signed affirmations from interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation, upon utilization of those individuals by counsel in a manner that implicates these procedures.

    4.    Should counsel fail to comply with the procedures set forth in this document, access to or communication with the detainee will not be permitted.

C. Verification of Representation

    1.    Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation*. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as

the name of the detainee being represented by the counsel. Additionally, counsel
shall provide evidence of his or her authority to represent the detainee.

2.     Counsel shall provide evidence of his or her authority to represent the detainee as
       soon as practicable and in any event no later than ten (10) days after the
       conclusion of a second visit with the detainee. The Court recognizes that counsel
       may not be in a position to present such evidence after the initial meeting with a
       detainee. Counsel for detainees and counsel for respondents shall cooperate to the
       fullest extent possible to reach a reasonable agreement on the number of counsel
       visits allowed. Should counsel for a detainee believe that the government is
       unreasonably limiting the number of visits with a detainee, counsel may petition
       the Court at the appropriate time for relief.

3.     If the counsel withdraws from representation of the detainee or if the
       representation is otherwise terminated, counsel is required to inform DoD
       immediately of that change in circumstances.

4.     Counsel must provide DoD with a signed representation stating that to the best of
       counsel's knowledge after reasonable inquiry, the source of funds to pay counsel
       any fees or reimbursement of expenses are not funded directly or indirectly by
       persons or entities the counsel believes are connected to terrorism or the product
       of terrorist activities, including "Specially Designated Global Terrorists,"
       identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23,
       2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b)
       counsel has complied with ABA Model Rule 1.8(f).

D. Logistics of Counsel Visits

1.     Counsel shall submit to the Department of Justice (DoJ) any request to meet with
       a detainee. This request shall specify date(s) of availability for the meeting, the
       desired duration of the meeting and the language that will be utilized during the
       meeting with the detainee. Reasonable efforts will be made to accommodate the
       counsel's request regarding the scheduling of a meeting. Once the request has
       been approved, DoJ will contact counsel with the date and duration of the
       meeting.

2.     Legal visits shall take place in a room designated by JTF-Guantanamo. No more
       than two attorneys (or one attorney and one assistant) plus one
       interpreter/translator shall visit with a detainee at one time, unless approved in
       advance by the Commander, JTF-Guantanamo. Such approval shall not be
       unreasonably withheld.

3.     Due to the mission and location of the US Naval Base at Guantanamo Bay, Cuba,
       certain logistical details will need to be coordinated by counsel prior to arrival.
       This includes arrangements for travel and lodging. Specific information regarding
       these issues will be provided by DoJ.

EXHIBIT A

4.      In order to travel to GTMO, all counsel must have a country and theater clearance
        for that specific visit. In order to begin processing country and theater clearances,
        counsel must have confirmed flight information for travel to GTMO and a valid
        current United States security clearance at the Secret level or higher, or its
        equivalent (as determined by appropriate DoD intelligence personnel). Country
        and theater clearances require twenty (20) days to process. Accordingly, counsel
        shall provide DoD, through DoJ, with the required information no later than 20
        days prior to the GTMO visit date, or as soon as a visit is scheduled. Requests for
        visits made inside of 20 days will not normally be granted.

## IV.  Procedures for Correspondence Between Counsel and Detainee

A.  Mail Sent by Counsel to Detainee ("Incoming Mail")

1.      Counsel shall send incoming legal mail for a detainee to the privilege team at the
        appropriate address provided by government counsel. Each envelope or mailer
        shall be labeled with the name of the detainee and shall include a return address
        for counsel sending the materials. The outside of the envelope or mailer for
        incoming legal mail shall be labeled clearly with the following annotation:
        "Attorney-Detainee Materials-For Mail Delivery to Detainee."

2.      Each page of legal mail shall be labeled "Attorney-Detainee Materials." No
        staples, paper clips or any non-paper items shall be included with the documents.

3.      Upon receiving legal mail from counsel for delivery to the detainee, the privilege
        team shall open the envelope or mailer to search the contents for prohibited
        physical contraband. Within two (2) business days of receipt of legal mail, and
        assuming no physical contraband is present, the privilege team shall forward the
        mail to military personnel at GTMO in a sealed envelope marked "Legal Mail
        Approved by Privilege Team" and clearly indicating the identity of the detainee to
        which the legal mail is to be delivered. The privilege team shall return to the
        sender any incoming mail that does not comply with the terms of paragraphs
        IV.A.1., 2.

4.      Within two (2) business days of receipt of legal mail from the privilege team,
        personnel at GTMO shall deliver the envelope or mailer marked by the privilege
        team as "Legal Mail Approved by the Privilege Team" to the detainee without
        opening the envelope or mailer. If counsel desires confirmation that the
        documents were delivered to the detainee, counsel is responsible for providing a
        stamped, self-addressed envelope for that purpose. The detainee shall be
        responsible for mailing any confirmation of delivery to counsel as outgoing legal
        mail. This method shall be the sole and exclusive means by which confirmation
        of delivery is provided to counsel.

4

EXHIBIT A

5.  Written correspondence to a detainee not falling within the definition of legal mail shall be sent through the United States Postal Service to the appropriate address provided by government counsel. Non-legal mail includes, but is not limited to, letters from persons other than counsel, including family and friends of the detainee. These non-privileged communications will be reviewed by military personnel at GTMO under the standard operating procedures for detainee non-legal mail.

6.  Counsel is required to treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise by the privilege team or by this Court or another court. Accordingly, if a counsel's correspondence contains any summary or recitation of or reference to a communication with a detainee that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information and Security Supplement to DOD Regulation 5200.1R.

7.  Written and oral communications with a detainee, including all incoming legal mail, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

B.  Mail Sent by Detainee to Counsel ("Outgoing Mail")

1.  Detainees will be provided with paper to prepare communications to counsel. In the presence of military personnel, the detainee will seal the written communication into an envelope and it will be annotated as "Attorney-Detainee Materials-For Mail Delivery To Counsel." Each envelope shall be labeled with the name of the detainee and the counsel. Envelopes annotated with the name of persons other the detainee's counsel (including family/friends or other attorneys) shall be processed according to the standard operating procedures for detainee non-legal mail.

2.  Military personnel will collect the outgoing legal mail within one (1) business day of being notified by the detainee that the communication is prepared for sealing and mailing.

3.  After the outgoing legal mail is collected from the detainee, the envelope will be sealed into a larger envelope by military personnel at Guantanamo which will be marked as "Attorney-Detainee Materials-For Mail Delivery To Counsel" and will

5

be annotated with the name of the detainee and the counsel. The envelope will be
sealed and mailed in the manner required for classified materials. Within two (2)
business days of receipt from the detainee, the communication will be mailed to
the appropriate address as provided by government counsel.

4.    Detainees also are permitted to send non-legal mail, including written
communications to persons other than counsel, through the United States Postal
Service. These communications shall be reviewed by military personnel at
Guantanamo under the standard operating procedures for detainee non-legal mail.

5.    In the event any non-legal correspondence or messages from a detainee to
individuals other than his counsel (including family/friends or other attorneys) are
sent to counsel as, or included with, legal mail, counsel shall return the documents
to military personnel at GTMO for processing according to the standard operating
procedures for detainee non-legal mail.

## V.  Materials Brought Into A Meeting With Detainee And Counsel

A.    Counsel shall bring only legal mail, writing utensils and paper into any meeting
with a detainee unless counsel has received prior approval from the Commander,
JTF-GTMO. The Commander shall not unreasonably withhold approval for
counsel to bring into a meeting with a detainee letters, tapes, or other
communications introducing counsel to the detainee, if the government has first
reviewed the communication and determined that sharing the communication with
the detainee would not threaten the security of the United States.

B.    Written and oral communications with a detainee, including all documents
brought into a meeting with a detainee, shall not include information relating to
any ongoing or completed military, intelligence, security, or law enforcement
operations, investigations, or arrests, or the results of such activities, by any nation
or agency or current political events in any country that are not directly related to
counsel's representation of that detainee; or security procedures at GTMO
(including names of U.S. Government personnel and the layout of camp facilities)
or the status of other detainees, not directly related to counsel's representation.

## VI.  Materials Brought Out Of A Meeting With Detainee and Counsel

A.    Upon the completion of each meeting with a detainee or during any break in a
meeting session, counsel will give the notes or documents used or produced
during the meeting to a designated individual at Guantanamo. These materials
will be sealed in the presence of counsel and will be handled as classified material
as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26,
OSD Information Security Supplement to DOD Regulation 5200.1R.

B.    Upon the completion of the counsel's visit to Guantanamo, the notes or
documents used or produced during the visit shall be sealed in the presence of

EXHIBIT A

counsel and placed in an envelope labeled as "Attorney-Detainee Meeting
Documents–For Delivery to Counsel." The envelope shall be sealed into a larger
envelope by military personnel at Guantanamo which shall be marked as
"Attorney-Detainee Meeting Documents-For Mail Delivery To Counsel" and shall
be annotated with the name of the detainee and the counsel. The envelope shall
be sealed and mailed in the manner required for classified materials. Within two
(2) business days following the completion of the counsel's visit to Guantanamo,
the package shall be mailed to the appropriate address provided by government
counsel.

C.    Correspondence or messages from a detainee to individuals other than his counsel
(including family/friends or other attorneys) shall not be handled through this
process. If a detainee provides these communications to his counsel during a
visit, counsel shall give those communications to military personnel at
Guantanamo so they can be processed under the standard operating procedures for
detainee non-legal mail.

## VII. Classification Determination of Detainee Communications

A.    Counsel may submit information learned from a detainee to the privilege team for
a determination of its appropriate security classification. Counsel shall
memorialize the information submitted for classification review into a written
memorandum outlining as specifically as possible the information for which
counsel requests a classification determination. All documents submitted for
classification review shall be prepared, handled and treated in the manner required
for classified materials, as provided by as required by Executive Order 12958,
DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to
DOD Regulation 5200.1R. No information derived from these submissions shall
be disclosed outside the privilege team pursuant to these procedures until after the
privilege team has reviewed it for security and intelligence purposes. Absent
express consent given by the Court, or except as otherwise provided in this
document, the submissions shall not be disclosed to any person involved in the
interrogation of a detainee, and no such individual may make any use of those
communications whatsoever, nor shall the submissions be disclosed to any
Government personnel involved in any domestic or foreign court, military
commission or combatant status tribunal proceedings involving the detainee.

B.    Counsel shall send all materials submitted for classification review to the
appropriate address to be provided by government counsel. The outside of the
envelope or mailer shall be clearly labeled "Attorney-Detainee Meeting
Documents-For Classification Review By Privilege Team." Each envelope or
mailer shall be annotated with the name of the detainee and the counsel. Each
page of the document submitted for classification review shall be marked
"Attorney-Detainee Materials" and "Classified." The envelope or mailer will be
sealed and mailed in the manner required for classified materials.

7

C.     As soon as possible after conducting the classification review, the privilege team shall advise counsel of the classification levels of the information contained in the materials submitted for review. The privilege team shall forward its classification determination directly to counsel after a review and analysis period not to exceed, from the time of receipt by the privilege team:

1. Seven (7) business days for information that is written in the English language;

2. Fourteen (14) business days for any information that includes writing in any language other than English, to allow for translations by the privilege team;

3. Twenty (20) business days for any information where the privilege team has reason to believe that a code was used, to allow for further analysis.

D.     While conducting classification review, the privilege team shall promptly report any information that reasonably could be expected to result in immediate and substantial harm to the national security to the Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials as appropriate.

E.     If, at any time, the privilege team determines that information in the documents submitted for classification review relate to imminent acts of violence, the privilege team shall report the contents of those documents to Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials.

F.     The privilege team shall not disclose any information submitted by counsel for classification review outside the privilege team, except as provided by these procedures or as permitted by counsel submitting the information.

## VIII. Telephonic Access to Detainee

A.     Requests for telephonic access to the detainee by counsel or other persons will not normally be approved. Such requests may be considered on a case-by-case basis due to special circumstances and must be submitted to Commander, JTF-Guantanamo.

B.     Any telephonic access by counsel will be subject to appropriate security procedures, but shall not include contemporaneous monitoring or recording.

C.     Any telephonic access by persons other than counsel will be subject to appropriate security procedures, including contemporaneous monitoring and recording.

8

**IX. Counsel's Handling And Dissemination Of Information From Detainee**

A.    Subject to the terms of any applicable protective order, counsel may disseminate the unclassified contents of the detainee's communications for purposes reasonably related to their representation of that detainee.

B.    Counsel is required to treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise. All classified material must be handled, transported and stored in a secure manner, as provided by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

C.    Counsel shall disclose to DoJ or Commander, JTF-Guantanamo any information learned from a detainee involving future events that threaten national security or involve imminent violence.

D.    Counsel may not divulge classified information not learned from the detainee to the detainee. Counsel may not otherwise divulge classified information related to a detainee's case to anyone except those with the requisite security clearance and need to know using a secure means of communication. Counsel for detainees in the coordinated cases pending in the United States District Court for the District of Columbia are presumed to have a "need to know" information in related cases pending before this Court. Counsel for respondents in those cases may challenge this presumption on a case-by-case basis for good cause shown.

**X. JTF-Guantanamo Security Procedures**

A.    Counsel and translators/interpreters shall comply with the following security procedures and force protection safeguards applicable to the US Naval Base in Guantanamo Bay, Cuba, JTF-Guantanamo and the personnel assigned to or visiting these locations, as well as any supplemental procedures implemented by JTF-Guantanamo personnel.

B.    Contraband is not permitted in JTF-Guantanamo and all visitors are subject to search upon arrival and departure. Examples of contraband include, but are not limited to, weapons, chemicals, drugs, and materials that may be used in an escape attempt. Contraband also includes money, stamps, cigarettes, writing instruments, etc. No items of any kind may be provided to the detainee without the advance approval of the Commander, JTF-Guantanamo.

C.    Photography or recording of any type is prohibited without the prior approval of the Commander, JTF-Guantanamo. No electronic communication devices are permitted. All recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment are prohibited in or near JTF-Guantanamo. Should any of these devices be inadvertently taken into a

EXHIBIT A

       prohibited area, the device must be surrendered to JTF-Guantanamo staff and
       purged of all information.

D.      Upon arrival at JTF-Guantanamo, security personnel will perform a contraband
       inspection of counsel and translators/interpreters using metal detectors as well as a
       physical inspection of counsel's bags and briefcases and, if determined necessary,
       a physical inspection of his/her person.

E.      Counsel shall not be permitted to interview or question members of the Joint Task
       Force about their duties or interactions with detainees without first obtaining
       permission from the Commander, Joint Task Force Guantanamo. Should
       permission be unreasonably denied, counsel may seek an Order from this Court
       granting permission for good cause shown.

F.      Counsel will meet with a detainee in conference facilities provided by GTMO.
       These facilities are subject to visual monitoring by closed circuit TV for safety
       and security reasons. (The only other method of visual observation available is
       for the door to remain open with military police sitting outside the door.). No oral
       communications between counsel and detainee will be heard.

G.      At the conclusion of a meeting with a detainee, counsel and
       translators/interpreters will again be inspected using a metal detector and, if
       deemed necessary, by physical inspection of their persons.

## 1. General Provisions

A.    The court finds that this case involves classified national security
      information or documents, the storage, handling and control of which
      require special security precautions, and access to which require a
      security clearance and a "need to know." This case may also involve
      other protected information or documents, the storage, handling and
      control of which may require special precautions in order to protect the
      security of United States personnel and facilities, and other significant
      interests.

B.    The purpose of this Protective Order is to establish the procedures that
      must be followed by a Petitioner, Petitioner's Counsel, and all other
      individuals who receive access to classified information or documents, or
      other protected information or documents, in connection with this case,
      including the Department of Defense (DoD) Privilege Team.

C.    The procedures set forth in this Protective Order will apply to all aspects
      of this case, and may be modified by further order of the court *sua sponte*
      or upon application by any party. The court will retain continuing
      jurisdiction to enforce or modify the terms of this Order.

D.    Nothing in this Order is intended to or does preclude the use of classified
      information by the Government as otherwise authorized by law outside of
      this action under the Detainee Treatment Act.

E.    Petitioner's counsel of record is responsible for advising his or her
      partners, associates, and employees, the petitioner, and others of the
      contents of this Protective Order, as appropriate or needed.

F.    All documents marked as classified, and information contained therein,
      remain classified unless the documents bear a clear indication that they
      have been declassified or determined to be unclassified by the agency or
      department that is the original classification authority of the document or
      of the information contained therein.

G.    Any violation of this Protective Order may result in a sanction for
      contempt.

## 2. Designation of Court Security Officer

1

The Court designates Christine E. Gunning as Court Security Officer for these cases, and Jennifer H. Campbell, Erin E. Hogarty, Joan B. Kennedy, Charline A. DaSilva, Nathaniel A. Johnson, Daniel O. Hartenstine, Michael P. Macisso, James P. Londergan, Barbara J. Russell and Miguel A. Ferrer as Alternate Court Security Officers, for the purpose of providing security arrangements necessary to protect from unauthorized disclosure of any classified documents or information, or protected documents or information, to be made available in connection with these cases. Petitioners' counsel shall seek guidance from the Court Security Officer with regard to appropriate storage, handling, transmittal, and use of classified documents or information.

### 3. Definitions

A.   "Detainee" means an alien detained by the DoD as an alleged enemy combatant at the U.S. Naval Base at Guantánamo Bay, Cuba.

B.   "Petitioner" means a Detainee or a "next friend" acting on his behalf.

C.   "Petitioner's Counsel" includes a lawyer who is employed or retained by or on behalf of a Detainee for purposes of representing the Detainee in this litigation, as well as co-counsel, interpreters, translators, paralegals, investigators, and all other personnel or support staff employed or engaged to assist in this litigation.

D.   As used herein, the words "documents" or "information" include, but are not limited to, all written or printed matter of any kind, formal or informal, including originals, conforming copies and non-conforming copies (whether different from the original by reason of notation made on such copies or otherwise), and further include, but are not limited to:

    i.   papers, correspondence, memoranda, notes, letters, reports, summaries, photographs, maps, charts, graphs, interoffice and intraoffice communications, notations of any sort concerning conversations, meetings, or other communications, bulletins, teletypes, telegrams, telefacsimiles, invoices, worksheets; and drafts, alterations, modifications, changes and amendments of any kind thereto;

    ii.   graphic or oral records or representations of any kind, including, but not limited to, photographs, charts, graphs, microfiche, microfilm, videotapes, sound recordings of any kind, and motion pictures;

    iii.   electronic, mechanical or electric records of any kind, including, but not limited to, tapes, cassettes, disks, recordings, electronic mail,

2

films, typewriter ribbons, word processing or other computer tapes or disks, and all manner of electronic data processing storage; and

iv.   information acquired or conveyed orally.

E.   The terms "classified information" and "classified documents" refer to:

i.   any document or information that has been classified by any Executive Branch agency in the interests of national security or pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders, as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)," or any classified information contained in such document;

ii.   any document or information, regardless of its physical characteristics, now or formerly in the possession of a private party that has been derived from United States government information that was classified, regardless of whether such document or information has subsequently been classified by the Government pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders, as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)" ;

iii.   oral or nondocumentary classified information known or reasonably should be known to be classified to the Petitioner or Petitioner's Counsel; or

iv.   any document or information as to which the Petitioner or Petitioner's Counsel has been notified orally or in writing that such document or information contains classified information.

F.   The terms "protected information" and "protected documents" refer to any document or information deemed by the court, either upon application by the Government or *sua sponte*, to require special precautions in storage, handling, and control, in order to protect the security of United States Government personnel or facilities, or other significant government interests.

G.   "Access to classified information" or "access to protected information" means having access to, reviewing, reading, learning, or otherwise coming to know in any manner any classified information or protected information.

3

H.    "Communication" means all forms of communication between Petitioner's Counsel and a Detainee, including oral, written, electronic, or by any other means.

I.    "Legal Mail" consists only of documents and drafts of documents that are intended for filing in this action and correspondence directly related to those documents that-

    i.    relate directly to the litigation of this action;

4

ii.    address only (a) events leading up to the capture of the Detainee on whose behalf the petition in this action was filed, (b) events occurring between such Detainee's capture and any hearing before a Combatant Status Review Tribunal (CSRT) relating to such Detainee, and (c) the conduct of the CSRT proceeding relating to such Detainee; and

iii.    do not include any of the following information, in any form, unless directly related to the litigation of this action:

    a.    information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency;

    b.    information relating to current political events in any country;

    c.    information relating to security procedures at the Guantánamo Naval Base (including names of United States government personnel and the layout of camp facilities) or the status of other Detainees;

    d.    publications, articles, reports, or other such material including newspaper or other media articles, pamphlets, brochures, and publications by nongovernmental or advocacy organizations, or any descriptions of such material.

J.    "Secure area" shall mean a physical facility accredited or approved for the storage, handling, and control of classified information.

## 4. Roles and Functions of the DoD Privilege Team and Special Litigation Team

A.    The "DoD Privilege Team" comprises one or more DoD attorneys and one or more intelligence or law enforcement personnel. If required, the DoD Privilege Team may include interpreters/translators. The DoD Privilege Team is charged with representing and protecting the interests of the United States Government related to security and threat information. The DoD Privilege Team is authorized to review all communications specified in this order, including written communications and other materials sent

from Petitioner's Counsel to the Detainee and communications from the Detainee to his counsel. The DoD Privilege Team may not disclose a communication from Petitioner's Counsel to the Detainee or from the Detainee to his counselother than information provided in a filing with the court and served on government counsel, unless the disclosure of such information is authorized by this or another order of the court or by Petitioner's Counsel.

B.    The DoD Privilege Team may redact or screen out material not meeting the definition of "Legal Mail" in section 2(I) above.

C.    When the DoD Privilege Team proposes to redact or screen out material sent from Petitioner's Counsel to a Detainee, Petitioner's Counsel for that Detainee must be notified.

D.    With the consent of Petitioner's Counsel, the DOD Privilege Team may consult with an individual or individuals in appropriate federal agencies for the purpose of identifying classified information and marking the documents with the appropriate classification. If Petitioner's Counsel does not consent to such consultation, information for which consultation is required will remain classified. Any such consultation will not waive attorney client, attorney work product, or any other applicable privilege. Further, the individual consulted for such purposes will not share the information with other government lawyers and/or officers involved in the litigation of this or other matters involving the petitioner, and the information shall not be used as a result of the consultation in the interrogation or investigation of petitioner. If the individual consulted is involved in the classification review of other documents, that individual may have discussions concerning such documents with government lawyers and/or officers involved in this and other matters involving the petitioner on condition that such discussions be for the sole purpose of classification review of such documents.

E.    In the event a dispute regarding the screening and redaction of material from legal mail sent from Petitioner's Counsel to a Detainee cannot be resolved among the parties and Petitioner's Counsel seeks the intervention of this court, the DoD Privilege Team may disclose the material at issue to the Commander, JTF-Guantánamo Naval Base or his representatives, including counsel for the Government.

F.    A "Special Litigation Team" is authorized to represent the DoD Privilege Team with respect to execution of its duties. The Special Litigation Team will be composed of one or more attorneys from the Department of Justice, who may not take part or be involved in litigating the merits of this

6

action under the Detainee Treatment Act or any other case brought by or against the Detainee.

G.   The DoD Privilege Team may, through the Special Litigation Team (see § 3(H) below), inform the court of any issues or problems related to the release or processing of information related to this case.

H.   The Special Litigation Team may not disclose information provided by the DoD Privilege Team, or any information submitted by Petitioner's Counsel to the DoD Privilege Team for review, except as provided by this Order or as permitted by Petitioner's Counsel or by the court.

I.   Petitioner's Counsel or the Special Litigation Team may submit filings to the court concerning the DoD Privilege Team or actions taken by it.

J.   Until otherwise notified, potentially privileged information in such filings must be submitted to the court under seal and contain a conspicuous notation as follows: "Submitted Under Seal-Contains Privileged Information." To maintain such information under seal, an appropriate application must be made to the court. Such information must be maintained under seal unless and until the court determines the information should not be sealed. Such filings by Petitioner's Counsel or the Special Litigation Team may not be served on counsel for respondent, except as authorized by Petitioner's Counsel or the court. With respect to a submission made under seal, a redacted version suitable for filing in the public record must be provided. Unresolved disputes concerning such redacted versions may be presented to the court.

K.   Petitioner's Counsel may not convey to a Detainee information redacted or screened by the DoD Privilege Team or designated for such redaction or screening, absent consent from the DoD Privilege Team, the Special Litigation Team, or the Government, or authorization by this court.

### 5. Access to Classified Information and Documents

A.   Without authorization from the Government, neither Petitioner nor Petitioner's Counsel may have access to any classified information involved in this case.

B.   Petitioner's Counsel is presumed to have a "need to know" all the information in the Government's possession concerning the Detainee he represents. This presumption is overcome to the extent the Government seeks to withhold from Petitioner's Counsel highly sensitive information or information concerning a highly sensitive source that the Government

7

presents to the court *ex parte* and *in camera*. Except for good cause shown, the Government must provide notice to Petitioner's Counsel on the same day it files such information with the court *ex parte*.

C.   Petitioners' counsel to be provided access to classified information shall execute the MOU appended to this Protective Order, and shall file executed originals with the Court and submit copies to the Court Security Officer and counsel for the government. The execution and submission of the MOU is a condition precedent for petitioners' counsel to have access to, or continued access to, classified information for the purposes of this proceeding.

D.   The substitution, departure, or removal of petitioners' counsel from this case for any reason shall not release that person from the provisions of this Protective Order or the MOU executed in connection with this Order.

E.   Authorization from the Government to access classified information will not be granted to Petitioner's Counsel unless Petitioner's Counsel has first:

   i.   received the necessary security clearance as determined by the Department of Justice; and

   ii.
        obtained written evidence of authority to represent the Detainee or obtained evidence of authority to represent the Detainee through the Detainee's next friend; and

   iii.  signed the Memorandum of Understanding ("MOU"), attached hereto as Exhibit A, agreeing to comply with the terms of this Protective Order.

F.   Prospective counsel for a Detainee may have up to two visits with a Detainee to obtain his authorization to seek review of the CSRT's determination of his status.

G.   The substitution, departure, or removal of Petitioner's Counsel from this case for any reason will not release that person from the provisions of this Protective Order.

H.   Except as provided herein, Petitioner's Counsel may not disclose any classified or protected information to any person including counsel in related cases brought by Guantanamo Bay detainees in this court or any other court. Petitioner's Counsel may not disclose classified or protected information to a detainee, unless that same information has been previously provided to Petitioner's Counsel by the same detainee.

8

Counsel may not confirm or deny to the detainee the assertions made by the detainee based on knowledge counsel may have obtained from classified documents.

I.   A disclosure of classified information includes any knowing, willful, or negligent action that could reasonably be expected to result in a communication or physical transfer of classified information.

J.   Neither Petitioner nor Petitioner's Counsel may disclose or cause to be disclosed in connection with this case any information known or believed to be classified except as otherwise provided herein.

K.   At no time, including any time subsequent to the conclusion of this case, may Petitioner's Counsel make any public or private statements disclosing any classified information made available pursuant to this Protective Order, including the fact that any such information is classified.

L.   Petitioner's Counsel is required to treat all information learned from a Detainee, including any oral or written communication with a Detainee, as TS//SCI information, unless and until the information is submitted to the DoD Privilege Team or counsel for the Government and determined to be nonclassified. All classified material must be handled, transported, and stored in a secure manner, as provided by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.  To the extent the handling, transportation, or storage restrictions imposed by this order are more restrictive than the Executive Order and regulations, this Protective Order shall govern.

M.   Petitioner's Counsel or the DoD Privilege Team must disclose to government counsel or Commander, JTF-Guantánamo Naval base any information learned from a Detainee involving any future event that threatens national security or is likely to involve violence. In such cases, the Privilege Team must provide contemporaneous notice to Petitioner's Counsel and retain for Petitioner's Counsel a copy of the material provided to government counsel or Commander, JTF-Guantánamo Naval Base.

N.   Petitioners' counsel shall not disclose the contents of any classified documents or information to any person, except those authorized pursuant to this Protective Order, the Court, and counsel for the government with the appropriate clearances and the need to know that information.

O.   In the event that classified information enters the public domain, counsel is not precluded from making private or public statements about the

9

information already in the public domain, but only where the statements are not subject to the limitation set forth below. Counsel may not make any public or private statements revealing personal knowledge from non-public sources regarding the classified or protected status of the information or disclosing that counsel had personal access to classified or protected information confirming, contradicting, or otherwise relating to the information already in the public domain. In an abundance of caution and to help ensure clarity on this matter, the Court emphasizes that counsel shall not be the source of any classified or protected information entering the public domain.

P. The foregoing shall not prohibit petitioners' counsel from citing or repeating information in the public domain that petitioners' counsel does not know or have reason to believe to be classified information or a classified document, or derived from classified information or a classified document.

## 6. Secure Storage of Classified Information

A. The Court Security Officer shall arrange for one appropriately secure area for the use of petitioners' counsel. The secure area shall contain a working area that will be supplied with secure office equipment reasonable and necessary to the preparation of the petitioners' case. Expenses for the secure area and its equipment shall be borne by the government.

B. The Court Security Officer shall establish procedures to ensure that the secure area is accessible to the petitioners' counsel during normal business hours and at other times on reasonable request as approved by the Court Security Officer. The Court Security Officer shall establish procedures to ensure that the secure area may be maintained and operated in the most efficient manner consistent with the protection of classified information. The Court Security Officer or Court Security Officer designee may place reasonable and necessary restrictions on the schedule of use of the secure area in order to accommodate appropriate access to all petitioners' counsel in this and other proceedings.

C. All classified information provided by the government to counsel for petitioners, and all classified information otherwise possessed or maintained by petitioners' counsel, shall be stored, maintained, and used only in the secure area.

D. No documents containing classified information may be removed from the

10

secure area unless authorized by the Court Security Officer or Court
Security Officer designee supervising the area.

E.      Consistent with other provisions of this Protective Order, petitioners'
        counsel shall have access to the classified information made available to
        them in the secure area, and shall be allowed to take notes and prepare
        documents with respect to those materials only in the secure area.

F.      Petitioners' counsel shall not copy or reproduce any classified information
        in any form, except with the approval of the Court Security Officer or in
        accordance with the procedures established by the Court Security Officer
        for the operation of the secure area.

G.      All documents prepared by petitioners' counsel that do or may contain
        classified information (including without limitation, notes taken or
        memoranda prepared by counsel and pleadings or other documents
        intended for filing with the Court) shall be transcribed, recorded, typed,
        duplicated, copied, or otherwise prepared only by persons who have
        received approval from the Court Security Officer for access to classified
        information.  Such activities shall take place in the secure area on
        approved word processing equipment and in accordance with the
        procedures approved by the Court Security Officer.  All such documents
        and any associated materials containing classified information (such as
        notes, memoranda, drafts, copies, typewriter ribbons, magnetic
        recordings, exhibits) shall be maintained in the secure area unless and
        until the Court Security Officer advises that those documents or
        associated materials are unclassified in their entirety.  None of these
        materials shall be disclosed to counsel for the government unless
        authorized by the Court, by petitioners' counsel or as otherwise provided
        in this Protective Order.

H.      Petitioners' counsel shall discuss classified information only within the
        secure area or in another area authorized by the Court Security Officer,
        shall not discuss classified information over any standard commercial
        telephone instrument or office intercommunication system, and shall not
        transmit or discuss classified information in electronic communications of
        any kind.

I.      The Court Security Officer or Court Security Officer designee shall not
        reveal to any person the content of any conversations she or he may hear
        by or among petitioners' counsel, nor reveal the nature of documents
        being reviewed by them, or the work generated by them, except as
        necessary to report violations of this Protective Order to the Court or to
        carry out their duties pursuant to this Order. In addition, the presence of
        the Court Security Officer or Court Security Officer designee shall not

11

operate as a waiver of, limit, or otherwise render inapplicable, the attorney-client privilege or work product protections.

J.     All documents containing classified information prepared, possessed or maintained by, or provided to, petitioners' counsel (except filings submitted to the Court and served on counsel for the government), shall remain at all times in the control of the Court Security Officer for the duration of these cases.

K.     As stated in more detail in SECTION 9 below, failure to comply with these rules may result in the revocation of counsel's security clearance as well as civil and/or criminal liability.

## 7. Access to Protected Information

A.     The Government may apply to the court to deem any information "protected," and if filed in this court to be maintained under seal. Such information must be maintained under seal unless and until the court determines the information should not be designated as "protected."

B.     Without authorization from the Government or the court, protected information may not be disclosed or distributed to any person or entity other than the following:

    i.     Petitioner's Counsel and counsel bound by the terms of this protective order in a case filed on behalf of another Detainee seeking review under the Detainee Treatment Act,

    ii.    the court and its support personnel, and

    iii.   a Detainee if the information was obtained in the first instance from the Detainee.

C.     Neither Petitioner nor Petitioner's Counsel may disclose or cause to be disclosed any information known or believed to be protected in connection with any hearing or proceeding in this case except as otherwise provided herein.

D.     At no time, including any period subsequent to the conclusion of the proceedings, may Petitioner's Counsel make any public or private statements disclosing any protected information made available pursuant to this Protective Order, including the fact that any such information is protected.

E.    Protected information may be used only for purposes directly related to this case and not for any other litigation or proceeding, except by leave of the court. Photocopies of documents containing such information may be made only to the extent necessary to facilitate the permitted use hereunder.

F.    Nothing in this Protective Order prevents the Government from using for any purpose protected information it provides to a party. Nothing in this Protective Order entitles a nonparty to this case to protected information.

G.    Within ninety (90) days of the resolution of this action, and the termination of any certiorari review therefrom, all protected documents or information, and any copies thereof, provided to Petitioner's Counsel must be promptly destroyed, and Petitioner's Counsel must certify in writing that all designated documents and materials have been destroyed. Counsel for the government may retain one complete set of any such materials that were presented in any form to the Court. Any such retained materials shall be placed in an envelope or envelopes marked "Protected Information Subject to Protective Order." In any subsequent or collateral proceeding, a party may seek discovery of such materials from the government, without prejudice to the government's right to oppose such discovery or its ability to dispose of the materials pursuant to its general document retention policies.

H.    The Record on Review will be provided to Petitioner's Counsel upon a date established by order of the court.

### Procedures for Filing Documents

A.    Until further order of this Court, any pleadings or other document filed by a petitioner shall be filed under seal with the Court through the Court Security Officer unless the petitioner has obtained from the Court Security Officer permission, specific to a particular, non-substantive pleading or document (e.g., motions for extensions of time, continuances, scheduling matters, etc.) not containing information that is or may be classified or protected, to file the pleading or document not under seal. Petitioner's counsel will provide the original pleading and six copies thereof to the Court Security Officer. Two copies of an additional title page should accompany the filing provided to the CSO. This title page should only include the caption of the case, an unclassified title and should not include any classification markings. The Court shall direct the clerk to enter on

13

the docket sheet the title page, the date it was filed, and the fact that it has been filed under seal with the Court Security Officer. The date and time of physical submission to the Court Security Officer shall be considered the date and time of filing with the Court. The Court Security Officer shall promptly examine the pleading or document and forward it to the appropriate agencies for their determination whether the pleading or document contains classified information. The CSO may consult with an individual or individuals in appropriate federal agencies for the purpose of identifying classified information and marking the documents with the appropriate classification markings. If it is determined that the pleading or document contains classified information, the Court Security Officer shall ensure that portion of the document, and only that portion, is marked with the appropriate classification marking and that the document remains under seal. If it is determined that the pleading or document contains protected information, the Court Security Officer shall ensure that portion of the document, and only that portion, remains under seal. Any document filed by petitioner that is determined not to contain classified information or protected information, and is not subject to any other restrictions on disclosure, shall immediately be unsealed by the Court Security Officer and placed in the public record. The Court Security Officer shall immediately deliver under seal to the Court and counsel for the government any pleading or document to be filed by petitioners that contains classified information or protected information.

B.    Any pleading or other document filed by the government containing classified information shall be filed under seal with the Court through the Court Security Officer. The date and time of physical submission to the Court Security Officer shall be considered the date and time of filing with the Court. The Court Security Officer shall serve a copy of any classified pleadings by the government upon the Petitioner at the secure facility.

C.    Nothing herein shall require the government to disclose classified or protected information. Nor shall anything herein prohibit the government from submitting classified information or protected information to the Court *in camera* or *ex parte* in these proceedings, or entitle petitioners or petitioners' counsel access to such submissions or information. Except for good cause shown in the filing, the government shall provide counsel for the petitioner or petitioners with notice served on such counsel on the date of the filing.

### 9.  Penalties for Unauthorized Disclosure

14

A. Any disclosure of classified information in violation of this order may constitute violations of United States criminal laws. In addition, any violation of the terms of this Protective Order shall be immediately brought to the attention of the Court and may result in a charge of contempt of Court and possible referral for criminal prosecution. *See, e.g.,* Executive Order 12958, as amended. Any breach of this Protective Order may also result in the termination of access to classified information and protected information. Persons subject to this Protective Order are advised that direct or indirect unauthorized disclosure, retention, or negligent handling of classified documents or information could cause damage to the national security of the United States or may be used to the advantage of an adversary of the United States or against the interests of the United States. Persons subject to this Protective Order are also advised that direct or indirect unauthorized disclosure, retention, or negligent handling of protected documents or information could jeopardize the security of United States government personnel and facilities, and other significant government interests. This Protective Order is to ensure that those authorized to receive classified information and protected information will not divulge this information to anyone who is not authorized to receive it, without prior written authorization from the original classification authority and in conformity with this Protective Order.

B. The USG reserves the right to unilateral take protective measures to safeguard classified information if it concludes that any provision of the protective order has been violated and the result of such violation reasonably could be expect to lead to the unauthorized disclosure of classified information.

C. The termination of these proceedings shall not relieve any person or party provided classified information or protected information of his, her, or its obligations under this Protective Order.

15

Exhibit A

## MEMORANDUM OF UNDERSTANDING REGARDING ACCESS TO CLASSIFIED NATIONAL SECURITY INFORMATION

Having familiarized myself with the applicable statutes, regulations, and orders related to, but not limited to, unauthorized disclosure of classified information, espionage and related offenses; The Intelligence Identities Protection Act, 50 U.S.C. § 421; 18 U.S.C. § 641; 50 U.S.C. § 783; 28 C.F.R. § 17 et seq.; and Executive Order 12958; I understand that I may be the recipient of information and documents that belong to the United States and concern the present and future security of the United States, and that such documents and information together with the methods and sources of collecting it are classified by the United States government. In consideration for the disclosure of classified information and documents:

(1) I agree that I shall never divulge, publish, or reveal either by word, conduct or any other means, such classified documents and information unless specifically authorized in writing to do so by an authorized representative of the United States government, or as expressly authorized by the Protective Order entered in the case captioned _____.

(2) I agree that this Memorandum of Understanding and any other non-disclosure agreement signed by me will remain forever binding on me.(3) I have received, read, and understand the Protective Order entered by the court in the case captioned _____, and I agree to comply with the provisions thereof.